## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                              Case No: 6:24-cr-114-WWB-LHP
                                         Case No. 6:24-cr-137-CEM-RMN

KEVIN OMAR OCASIO JUSTINIANO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, KEVIN OMAR OCASIO JUSTINIANO, and the attorneys for the defendant, Jeffrey L. Ertel, Esq. and Sulay Rios-Fuentes, Esq., mutually agree as follows:

**A.**   **Particularized Terms**

1.   <u>Count Pleading To</u>

The defendant shall enter a plea of guilty to Counts One and Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP and Counts One, Two, and Three of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN.

Count One of the Indictment in Case No. 6:24-cr-114-WWB-LHP charges the defendant with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846.

Defendant's Initials _KOOJ_

Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP charges the defendant with possession of a machinegun in furtherance of the drug conspiracy charged in that indictment, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii).

Count One of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN charges the defendant with committing and aiding and abetting the commission of a carjacking resulting in death in violation of 18 U.S.C. §§ 2119(3) and 2.

Count Two of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN charges the defendant with committing and aiding and abetting the commission of a kidnapping resulting in death in violation of 18 U.S.C. §§ 1201(a)(1) and 2.

Count Three of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN charges the defendant with committing and aiding and abetting the commission of possession in furtherance, using, carrying, brandishing, and discharging a firearm in relation to a crime of violence – specifically the carjacking charged in that indictment – causing death, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1).

2.     Minimum and Maximum Penalties

Count One of the Indictment in Case No. 6:24-cr-114-WWB-LHP is punishable by a term of imprisonment of up to 20 years, a fine of not more than $1 million, a term of supervised release of at least 3 years up to life, and a special assessment of $100.

Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP is punishable by a mandatory minimum term of imprisonment of 30 years up to life, consecutive to any other term of imprisonment, a fine of not more than $250,000, a term of supervised release of up to 5 years, and a special assessment of $100.

Count One of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN is punishable by a term of imprisonment of up to life, a fine of not more than $250,000, a term of supervised release of up to 5 years, and a special assessment of $100.

Count Two of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN is punishable by a mandatory minimum term of life imprisonment, a fine of not more than $250,000, a term of supervised release of up to 5 years, and a special assessment of $100.

Count Three of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN is punishable by a mandatory minimum term of imprisonment of 10 years up to life, consecutive to any other term of imprisonment, a fine of not more

than $250,000, a term of supervised release of up to 5 years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

    3.    *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to the punishments outlined above because the following facts have been admitted by the defendant and are established by this plea of guilty:

- The defendant possessed a machinegun in furtherance of a drug trafficking crime as alleged in Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP.

- The death of K.A. resulted from the carjacking and kidnapping charged in Counts One and Two of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN.

- The death of K.A. resulted from the discharge of the firearm charged in Count Three of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN.

Defendant's Initials <u>*KOOJ*</u>          4

4. <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One of the Indictment in Case No. 6:24-cr-114-WWB-LHP are:

<u>First</u>:    two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute or possess with intent to distribute controlled substance;

<u>Second</u>:    the Defendant knew the unlawful purpose of the plan and willfully joined in it; and

<u>Third</u>:    the object of the unlawful plan was to possess with the intent to distribute controlled substances.

The elements of Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP are:

<u>First</u>:    the Defendant committed the drug-trafficking crime charged in Count One of the Indictment; and

<u>Second</u>:    that the Defendant knowingly possessed a machinegun in furtherance of that crime, as charged in the indictment.

The elements of Count One of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN are:

<u>First</u>:    the Defendant took or attempted to take or aided and abetted the taking of a motor vehicle from or in the presence of another;

<u>Second</u>:    the Defendant did so by force and violence or by intimidation;

<u>Third:</u>   the motor vehicle had previously been transported, shipped, or
received in interstate or foreign commerce; and

<u>Fourth:</u>   the Defendant intended to cause death or serious bodily harm when
the Defendant took the motor vehicle; and

<u>Fifth:</u>   death resulted from the commission of the offense.

The elements of Count Two of the Second Superseding Indictment in

Case No. 6:24-cr-137-CEM-RMN are:

<u>First:</u>   the Defendant knowingly and willfully kidnapped, seized, confined,
inveigled, decoyed, abducted, or carried away the victim, K.A. or
aided and abetted others in doing so;

<u>Second:</u>   the Defendant did so with the intent to secure a ransom, reward, or
other benefit and held the victim for that reason;

<u>Third:</u>   the Defendant traveled in or used the mail or any means, facility, or
instrumentality of interstate commerce in kidnapping, seizing,
confining, inveigling, decoying, abducting, carrying away, the victim
or in furtherance of kidnapping the victim; and

<u>Fourth:</u>   death resulted from the commission of the offense.

The elements of Count Three of the Second Superseding Indictment in

Case No. 6:24-cr-137-CEM-RMN are:

<u>First:</u>   the Defendant committed or aided and abetted the commission of
the violent crime charged in Count One of the Indictment;

<u>Second:</u>   during and in relation to that violent crime, the Defendant
knowingly possessed a firearm in furtherance of that violent crime or
used, carried, brandished, or discharged a firearm, or aided and
abetted the possession in furtherance, use, carrying, brandishing, or
discharging of a firearm, as charged in the indictment; and

<u>Third:</u>   death resulted from the commission of the offense.

The defendant is charged in some counts with aiding and abetting, in violation of 18 U.S.C. § 2. A defendant "aids and abets" a person if the defendant intentionally joins with the person to commit a crime. A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to these two plea agreements.

6. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the estate of K.A.

7. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 924(d), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(5), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: the $60,000 in proceeds the defendant admits he obtained as the result of his participation in the murder on April 11, 2024, as well as: 1) the $16,000 in U.S. currency seized on or about August 14, 2024 that was the remainder of the proceeds the defendant obtained from his participation in the murder on April 11, 2024; and 2) a black .40 caliber Glock 22, bearing serial number BXAE441, with an "auto-sear" device attached, and associated ammunition, all of which were seized from a vehicle driven by the defendant on or about August 23, 2022, and were involved in the offense charged in Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHPwhich assets. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $60,000 as a result of his participation in the murder on April 11, 2024 and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained,

as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since most of the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds,

including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets

and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**     **Standard Terms and Conditions**

    1.     <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory

Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the

count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank

records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may

make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.  Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.  Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against

compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. <u>Entire Agreement</u>

This plea agreement, including Exhibit A, constitutes the entire agreements between the government and the defendant with respect to the

Defendant's Initials _KOOJ_          19

aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____10th_____ day of _____January_____, 2025.

ROGER B. HANDBERG
United States Attorney

_____
Kevin Omar Ocasio Justiniano
Defendant

_____
Dana E. Hill
Assistant United States Attorney

_____
Jeffrey L. Ertel, Esq.
Attorney for Defendant

_____
Sulay Rios-Fuentes, Esq.
Assistant Federal Public Defender
Attorney for Defendant

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.       Case No: 6:24-cr-114-WWB-LHP
        Case No. 6:24-cr-137-CEM-RMN

KEVIN OMAR OCASIO JUSTINIANO

<u>PERSONALIZATION OF ELEMENTS</u>

For Count One of the Indictment in Case No. 6:24-cr-114-WWB-LHP:

<u>First</u>: Did two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute or possess with intent to distribute a controlled substance?

<u>Second</u>: Did you know of the unlawful purpose of the plan and willfully join in it?

<u>Third</u>: Was the object of the unlawful plan to possess with the intent to distribute controlled substances that were, in fact, cocaine and fentanyl?

For Count Two of the Indictment in Case No. 6:24-cr-114-WWB-LHP:

<u>First</u>: Did you commit the drug-trafficking crime charged in Count One of the Indictment?

<u>Second</u>: Did you knowingly possessed a machinegun in furtherance of that crime, as charged in the Indictment?

For Count One of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN:

<u>First</u>: Did you take, attempt to take, or aid and abet the taking of a motor vehicle from or in the presence of another?

<u>Second</u>: Did you do so by force and violence or by intimidation?

Defendant's Initials _KOQJ_     21

**Third:** Had the motor vehicle previously been transported, shipped, or received in interstate or foreign commerce?

**Fourth:** Did you intend to cause death or serious bodily harm when you took or aided and abetted the taking of the motor vehicle?

**Fifth:** Did death result from the commission of the offense?

For Count Two of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN:

**First:** Did you knowingly and willfully kidnap, seize, confine, inveigle, decoy, abduct, or carry away the victim, K.A. or aid and abet others in doing so?

**Second:** Did you kidnap, seize, confine, inveigle, decoy, abduct, or carry away the victim, or aid and abet others in doing so, with the intent to secure a ransom, reward, or other benefit and hold the victim for that reason?

**Third:** Did you travel in or use the mail or any means, facility, or instrumentality of interstate commerce in kidnapping, seizing, confining, inveigling, decoying, abducting, carrying away, the victim or in furtherance of kidnapping the victim?

**Fourth:** Did death result from the commission of the offense?

For Count Three of the Second Superseding Indictment in Case No. 6:24-cr-137-CEM-RMN:

**First:** Did you commit or aid and abet the commission of the violent crime charged in Count One of the Indictment?

**Second:** Did you, during and in relation to that violent crime, knowingly possess a firearm in furtherance of that violent crime or use, carry, brandish, or discharge a firearm, or aid and abet the possession in furtherance, use, carrying, brandishing, or discharging of a firearm, as charged in the indictment?

**Third:** Did death result from the commission of the offense?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                    Case No: 6:24-cr-114-WWB-LHP
                           Case No. 6:24-cr-137-CEM-RMN

KEVIN OMAR OCASIO JUSTINIANO
a/k/a "Kevo,"

## FACTUAL BASIS

In the course of an investigation in 2022, the DEA identified the defendant, KEVIN OMAR OCASIO JUSTINIANO, a/k/a "Kevo," as a conspirator who worked with others to distribute fentanyl and cocaine. In the course of an investigation into the robbery and murder of K.A. on April 11, 2024, the FBI identified OCASIO JUSTINIANO as one of individual who perpetrated that crime.

The federal investigations revealed the following true facts about OCASIO JUSTINIANO's involvement in these activities and other related crimes:

### *May 23, 2022 Testing of Cocaine and Fentanyl Mixture*

On May 23, 2022, at approximately 7:15 p.m., Conspirator-1 received an incoming call from OCASIO JUSTINIANO. During this phone call, OCASIO JUSTINIANO told Conspirator-1, "the perico is really good and I have somebody here right now testing it." The term "perico" is Spanish slang for cocaine and can also be used to refer to mixtures of cocaine and fentanyl. OCASIO JUSTINIANO told Conspirator-1 that his tester "is about to tell me how good is it." Conspirator-1

Defendant's Initials _____      23

stated to OCASIO JUSTINIANO, "good like coco cola" and an unknown female is overheard telling OCASIO JUSTINIANO, "when the 'perico' is good, the 'perico' taste like 'perico.'" During this phone call, OCASIO JUSTINIANO asks someone with him "did el gringo fall asleep?" An unknown male then starts yelling, "yo, yo, yo, Narcan, Narcan, he's gone, he's gone." Narcan is the brand name of a drug used to revive individuals who are suffering from opioid overdoses caused by drugs such as fentanyl. Conspirator-1 asked OCASIO JUSTINIANO "did we lost one?" OCASIO JUSTINIANO responded, "we just lost one here father." Conspirator-1 asked, "but did you end up giving him one and one?" OCASIO JUSTINIANO told Conspirator-1, "yes I gave him one and one." Based on drugs seized in this investigation and the apparent overdose, the DEA believes that "one and one" referred to a mixture of fentanyl and cocaine. After this call, on May 23, 2022, there were additional phone calls intercepted between OCASIO JUSTINIANO and Cosnpirator-1 indicating that the tester was revived, and the tester confirmed the potency of the drugs involved.

### *May 31, 2022 Testing of Cocaine and Fentanyl Mixture*

On May 31, 2022, at approximately 7:06 p.m., Conspirator-1 called OCASIO JUSTINIANO. OCASIO JUSTINIANO stated, "Tell me father. Hey father, we got off the route just a moment yo go here to Goldenrod that- that Brocha called for-for the money. To pick up that money." Conspirator-1 replied, "What did they say

about the work?" OCASIO JUSTINIANO replied, "Uhh… they're gonna call now. These two, uhh, well, uhh, the fucker Le-Leo said it was good. That it felt good, and that. And the white guy told me he gives it between a seven or an eight." Conspirator-1 said, "What we have it's good?" and asked, "What we have it's sold out?" OCASIO JUSTINIANO replied, "Well, that- the questi- I didn't ask exactly that question. If what we have now it's better than that. You know if- not the new thing, I mean, what we had." While OCASIO JUSTINIANO is on the phone with Conspirator-1, a third party can be heard talking on another device to a person called "Leo." OCASIO JUSTINIANO states, "Leo, Leo, Leo, it's me dude. Hey it's me, it's us uhh…what do you think, it's this one better than the one we had? Yes, the one we have now, what we used to have before. Is it better than the one we had today, today? The- the- the thing that we gave you, yes, which one it's better, if the one we had in the business before or this one that we just gave you that we're trying it out?" After an interaction, OCASIO JUSTINIANO then relayed to Conspirator-1, "He says he didn't take the- Father, Leo says he didn't take two, that he just took one and he felt good. That we always takes two." Conspirator-1 responded "He should take the other one! He should take it!"

### July 6, 2022 Inventory at Apartment

On July 6, 2022, at approximately 1:25 p.m., Conspirator-1 called OCASIO JUSTINIANO. OCASIO JUSTINIANO said, "I'm here in the apartment father."

Conspirator-1 replied "I, I, I send you a text now." Based on surveillance, law enforcement knows that at the time of this communication OCASIO JUSTINIANO was at an apartment on Summit Creek Blvd in Orlando that was used in the course of the drug distribution conspiracy.

At approximately 1:47 p.m., Conspirator-1 received a call from OCASIO JUSTINIANO: "Hey, there is not combo here." Conspirator-1 responded, "Come again?" OCASIO JUSTINIANO replied, "there is not combo." Conspirator-1 stated, "How come there isn't? Of course yes." OCASIO JUSTINIANO replied, "In the backpack? Nothing in the backpack?" Conspirator-1 then asked, "How come there isn't?" OCASIO JUSTINIANO stated, "No man what's here, what's here, there are some scattered here." Conspirator then stated, "Yeah but double check there must be one, one or two already ready… bro if need it you can prepare yourself because [U/I] and me are tired of doing it already." OCASIO JUSTINIANO replied, "So I have to prepare it myself because they are not here." Conspirator-1 stated, "Must be one or two done there." OCASIO JUSTINIANO replied, "There is nothing bro, for re-for for real there is nothing. What is here is…" Conspirator-1 replied "No, but there I have-there was one of combo done." OCASIO JUSTINIANO replied, "I don't know if someone came or I don't know, because what's here is … is…" Conspirator-1 stated, "No one was there" OCASIO JUSTINIANO then stated "Look my love, for real, bro you can call me on cam, call me on cam." Conspirator-

1 then stated, "Yeah, but there is one there [U/I] money..." Conspirator-1 continued "There is one, yeah, search well" to which OCASIO JUSTINIANO responded, "But there is five, five of [U/I] , in a ziploc of the five. And there is a red bag full of, of, of some undone. There is a couple of ping-pong here in a Ziploc. There is a yellow bag, there's..." Conspirator-1 responded "There is a bag with, there is a bag with a package done, there is one with a package done plus another one that has pairs made that are loose and you have to count it."

### *August 16, 2022 Distribution of "Dealer Packs"*

On August 16, 2022, law enforcement conducted surveillance on OCASIO JUSTINIANO as he left a residence on Conway Road in Orlando known to be used in drug distribution. At approximately 7:24 p.m., OCASIO JUSTINIANO arrived at an intersection of Goldenrod Blvd and Curry Ford Road and met an individual (Conspirator-2). Conspirator-2 got into OCASIO JUSTINIANO's vehicle and the two drove for a few minutes around the neighborhood. OCASIO JUSTINIANO dropped off Conspirator-2 at the same spot he was picked up. OCASIO JUSTINIANO then returned to the apartment.

Law enforcement then located Conspirator-2 and detained him and conducted a search based on the smell of marijuana. Conspirator-2 was found to be carrying multiple small baggies prepared for distribution in a concealed manner. These baggies were tested by DEA laboratories. One pack of baggies contained 37

individual baggies containing an estimated total of 1.3 grams of a mixture of fentanyl and cocaine. One pack contained 37 individual baggies containing an estimated total of 1.3 grams of cocaine. One pack contained 31 baggies containing an estimated total of 0.46 grams of cocaine. One pack contained 31 baggies containing an estimated total of 0.76 grams of a mixture of cocaine and fentanyl. Conspirator-2's phone indicated that he had contacted or attempted to contact OCASIO JUSTINIANO as he was being detained by law enforcement.

### *August 23, 2022 Arrest With Automatic Firearm*

On August 23, 2022, law enforcement was conducting surveillance of OCASIO JUSTINIANO. At approximately 5:00 p.m., OCASIO JUSTINIANO parked the car at a department store. OCASIO JUSTINIANO was the only occupant of the car and was seen leaving the driver's seat by himself. As OCASIO JUSTINIANO was leaving the department store, he identified law enforcement and attempted to flee on foot and was apprehended shortly thereafter. OCASIO JUSTINIANO had the key to the vehicle he was driving on his person when arrested and had purchased items used to prepare drugs for packaging from the department store. A search of the vehicle revealed:

- A clear bag of cocaine weighing approximately 0.1 grams;
- A clear red bag of fentanyl weighing approximately 0.1 grams;
- A black .40 caliber Glock 22 handgun that was loaded with one bullet; and
- Attached to the Glock an "auto-sear" conversion device that converts a semi-automatic firearm into a fully-automatic firearm.

Defendant's Initials KOOJ              28

The appearance of the drugs was similar to the drugs seized on August 16, 2022.

In all of this conduct leading up to the August 23, 2022 arrest, OCASIO JUSTINIANO knowingly and willfully joined into a plan to distribute and possess with intent to distribute controlled substances, including substances containing a detectible amount of fentanyl and cocaine, and possessed a machinegun in furtherance of that drug trafficking offense.

### *Summer 2022 Attempted Robbery and Robbery of Drug Dealer*

At some point in the summer of 2022, OCASIO JUSTINIANO and a conspirator purchased law enforcement tactical gear from a retail store near Orange Blossom Trail on Orlando:

 

OCASIO JUSTINIANO and his conspirator purchased this gear for the expressed purpose of conducting home invasion robberies.

Around two to three weeks after the purchase of the tactical gear, OCASIO JUSTINIANO rented a hotel room near the Florida Mall in Orlando, Florida. At the room, OCASIO JUSTINIANO met up with Jordanish TORRES-GARCIA a/k/a "Jordani," and two other individuals who planned to participate in a robbery. The purpose of the meeting was to await instructions from a conspirator (Conspirator-1) about the location of an armed robbery. Conspirator-1 had information on a home invasion robbery or "rip" that they were going to conduct. Everyone in the hotel room had firearms and OCASIO JUSTINIANO, TORRES-GARCIA, and one other individual were wearing the tactical gear. Conspirator-1 eventually called and said there would be no "Vuelta" (job/robbery) that day.

Later in the summer of August 2022, OCASIO JUSTINIANO arranged to conduct a robbery of a known drug dealer. OCASIO JUSTINIANO worked with a conspirator (Conspirator-2) to arrange to fake purchase of a kilogram of cocaine from a known drug dealer. OCASIO JUSTINIANO, TORRES-GARCIA, and another individual ~~all got into the law enforcement uniforms to prepare to rob the drug dealer~~ ~~and~~ drove – along with Conspirator-2 – to a mobile home where the deal was planned to occur. JUSTINIANO and TORRES-GARCIA were armed. When the dealer put the kilogram of cocaine in the car they were driving, OCASIO JUSTINIANO and TORRES-GARCIA drove away without paying, leaving Conspirator-2 at the mobile home where he pretended that he did not know this was

the plan all along. OCASIO JUSTINIANO sold the kilogram of cocaine through an intermediary and split the proceeds with TORRES GARCIA, the other individual, and Conspirator-2.

### *December 2023 Barbershop Brandishing*

On November 17, 2022, TORRES GARCIA was arrested and detained and committed to the District of Puerto Rico for violating the terms of his supervised release. TORRES GARCIA was incarcerated until October 6, 2023.

In early December 2023, OCASIO JUSTINIANO and TORRES GARCIA went to a barbershop and TORRES GARCIA displayed weapon, threatening individuals in the barbershop in connection with a personal dispute.

 

TORRES GARCIA was not wearing a mask and a video of this incident was shared by others on a text chain.

### *February 15, 2024, Home Invasion Robbery*

On February 15, 2024, OCASIO JUSTINIANO, TORRES GARCIA, and TORRES GARCIA's brother, SONIC TORRES JR. a/k/a "Bebo," conducted a home invasion in the Poinciana area of Florida. TORRES GARCIA called OCASIO JUSTINIANO on the day of the robbery to recruit him and TORRES GARCIA and his brother, TORRES JR picked up OCASIO JISTINIANO to go to the home in a white Honda Crosstour. All three were armed and wearing masks as they drove by the home multiple times. They then forced the door open with a crow bar and entered the residence wearing masks and armed with handguns:





The three individuals temporarily confined three males and three females into a room and began searching the house for home for valuables. OCASIO JUSTINIANO and TORRES GARCIA stayed with the occupants while TORRES JR. searched the home and eventually found watches and jewelry. The day after the robbery, OCASIO JUSTINIANO and TORRES GARCIA sold items from the robbery at a pawn shop in Orlando.



*__April 11, 2024 Carjacking and Kidnapping Murder of K.A.__*

On April 11, 2024, at around 12:30 p.m. K.A. left her home in Homestead, Florida in a white Dodge Durango and began the four-hour drive north to an address in Casselberry, Florida where GIOVANNY CRESPO HERNANDEZ lived. The purpose of this trip was for K.A. to pick up $170,000 in drug proceeds to be laundered as part of an ongoing drug money laundering operation. On April 11, 2024, CRESPO HERNANDEZ was using a cellular device (xxx) xxx-8173, subscribed in his own name. JORDANISH TORRES GARCIA was using a phone number (xxx) xxx-8483 and OCASIO JUSTINIANO was using a phone number (xxx) xxx-0302. On April 11, 2024, at or around the same time that K.A. was leaving Homestead, CRESPO HERNANDEZ called TORRES GARCIA.

In the afternoon of April 11, 2024, location data from the cellular phones used by TORRES GARCIA and OCASIO JUSTINIANO show that they were located, waiting in the Casselberry neighborhood where CRESPO HERNANDEZ lived and where K.A. was set to meet up with him. At 4:36 p.m. TORRES GARCIA and OCASIO JUSTINIANO purchased lighter fluid at a nearby gas station.



After purchasing this lighter fluid, location data from their cellular phones show that TORRES GARCIA and OCASIO JUSTINIANO returned to CRESPO HERNANDEZ's neighborhood, where they waited for the victim to arrive.

Between approximately 5:13 p.m. and 5:31 p.m., CRESPO HERNANDEZ and TORRES GARCIA exchanged a series of phone calls and then stopped communicating. Location data from K.A.'s phone shows that she was in CRESPO

HERNANDEZ's neighborhood at or around the time that TORRES GARCIA and OCASIO JUSTINIANO were waiting for her.

Shortly before 5:34 p.m., witnesses saw a green Acura bumping the white Dodge Durango at or near the corner of East Lake Drive and Tuskawilla Road – near CRESPO HERNANDEZ's neighborhood. K.A. called her husband while this was happening. At 5:34 p.m., witnesses captured a video of a male in a ski mask as he got out of the green Acura and walk up to K.A.'s Durango with an AR-15 rifle. The gunman was TORRES GARCIA, who then entered the white Durango through the rear door and into the back seat. The video then shows the Durango and the Acura take a U-Turn and drive away.



The Dodge Durango had previously been transported, shipped and received in interstate commerce. TORRES GARCIA later admitted to law enforcement that he was the individual depicted in this video holding up the rifle and conducting the carjacking/kidnapping. TORRES GARCIA also stated that there was another individual in the green Acura who drove the vehicle after he got into the white Dodge Durango. Location data from OCASIO JUSTINIANO and TORRES GARCIA indicate that they were present at or near the carjacking site at the times captured on the cell phone footage.

After the carjacking, the Durango and Acura followed each other from Seminole County to Osceola County. At 5:34 p.m., OCASIO JUSTINIANO called TORRES GARCIA and, after this call, the two contacted each other regularly while these two vehicles were traveling in tandem. Surveillance cameras captured the two cars traveling together from the site of the kidnapping/carjacking to the site of the shooting murder.

 

The two vehicles arrived at a construction area near an address on Boggy Creek Road where the victim's burned-out Dodge Durango was later recovered. A residential surveillance system aimed toward the street captured the interaction of vehicles at the street in front of the dirt road. Location data from OCASIO JUSTINIANO and TORRES GARCIA indicate that they were present at or near the Boggy Creek Road site at the times captured on surveillance footage.

At 6:31 p.m., the Durango and the Acura stop across the street from the dirt road before turning down the drive to the site where the Durango was later recovered:



The two vehicles remain at the homicide scene until 6:52 p.m., when the green Acura returns to the main road and meets with a gold Venza. An individual in a yellow sweatshirt exited the Venza, put something into the Acura and got back into the Venza. The Venza that arrived was registered to the mother of DERECK

ALEXIS RODRIGUEZ BONILLA and cell phone location data indicates that

RODRIGUEZ BONILLA was present at that location. RODRIGUEZ BONILLA

also later told law enforcement that he was present in the Venza at the request of

TORRES GARCIA. RODRIGUEZ BONILLA claimed to be there to be giving $80

to TORRES GARCIA while wearing a ski mask. In reality, RODRIGUEZ

BONILLA and a juvenile male accomplice delivered a firearm to the location and

OCASIO JUSTINIANO received that firearm in the green Acura and delivered that

firearm to TORRES GARCIA. When the juvenile male gave the firearm to

OCASIO JUSTINIANO, the juvenile stated, "he asked for it."

At approximately 7:13 p.m., a 911 call was received about a nearby vehicle on

fire in the Boggy Creek Road area. Law enforcement responded and found the white

Durango and a burned body with multiple bullet wounds inside. The body was

identified as K.A. through DNA analysis of blood stains. Twelve spent cartridges

were located on the ground and tests of the cartridges indicate that the same weapon

was used in a homicide on April 10, 2024, in which RODRIGUEZ BONILLA,

TORRES GARCIA, and a juvenile were involved.

The green Acura was later recovered in an apartment complex and

surveillance cameras captured the interactions between the green Acura, a red

Toyota Corolla, and the Venza at the apartment complex where the green Acura was

abandoned. Surveillance video showed the green Acura and red Corolla arrive at

7:31 p.m. and show the red Corolla meet up with the Venza at 7:37 p.m. When the green Acura was later found, it was dusted for fingerprints and OCASIO JUSTINIANO's fingerprint was found in the green Acura. RODRIGUEZ BONILLA also admitted to law enforcement that he also met up with TORRES GARCIA at or around this location, still in a ski mask, in order to receive the $80 back from TORRES GARCIA that he had loaned him approximately 45 minutes earlier.

After the robbery, OCASIO JUSTINIANO and TORRES GARCIA split up and counted the $170,000 obtained from K.A. OCASIO JUSTINIANO received $60,000. On August 14, 2024, the FBI recovered $16,000 of this currency.

In his conduct on April 11, 2024, OCASIO JUSTINIANO agrees that he and others, aiding and abetting each other, took a motor vehicle that traveled in interstate commerce from K.A. by force and intimidation, intending to cause serious bodily harm, resulting in K.A.'s death. OCASIO JUSTINIANO agrees that he and others, aiding and abetting each other, knowingly and willfully kidnapped K.A. with the intent to secure a reward or benefit, using an instrumentality of interstate commerce, resulting in K.A.'s death. OCASIO JUSTINIANO agrees that he and others, aiding and abetting each other, possessed, brandished, and discharged a firearm during and in furtherance of the carjacking of K.A., resulting in K.A.'s death. JUSTINIANO

agrees that he and others, aiding and abetting each other, intentionally damaged and destroyed a vehicle that traveled in interstate commerce by fire.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.